736 P.2d 376

Thelma W. DYE, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

K Mart # 4387, Respondent Employer,

K Mart Corporation c/o KM Administrative Services, Respondent Carrier.

No. CV–86–0481–PR.

Supreme Court of Arizona, En Banc.

March 24, 1987.

Reconsideration Denied June 2, 1987.

Chris T. Johnson, P.C. by Chris T. Johnson, Phoenix, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n, Phoenix, for respondent.

Moore, Long & Lester by Joseph L. Moore, Phoenix, for respondent Employer and Carrier.

FELDMAN, Vice Chief Justice.

Under Arizona's workers' compensation scheme, injuries to certain body

parts, such as arms and legs, are compensated according to a statutory schedule.[1] A.R.S. § 23–1044(B). The schedule limits compensation to a certain percentage of the claimant's average monthly income for a set number of months. The percentage and number of months vary according to the injury. *Id.* In contrast, injuries affecting body parts not listed on the schedule entitle the claimant to "disability compensation equal to fifty-five percent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability...." A.R.S. § 23–1044(C). Because the amount of compensation turns on whether a particular injury is scheduled or unscheduled, classification is often hotly disputed.[2]

We accepted review in this workers' compensation case to answer a single question: when the residual effects of a compensable injury affect primarily a scheduled portion of the body, but also affect an unscheduled portion of the body, is the claimant's disability scheduled or unscheduled? *See* Rule 23(c), Ariz.R.Civ.App.P., 17A A.R.S. (Supp.1986). We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## I. FACTS AND ISSUES

While working at K–Mart in 1983, Thelma Dye (Dye) fell and fractured the anatomical neck of her left humerus, the upper arm bone extending from the shoulder to the elbow. The anatomical neck is located just below the humeral head, which fits into a cavity of the scapula to form the shoulder joint. The residual effects of Dye's fracture include a 15 percent permanent impairment of her "left upper extremity," pain extending from the shoulder to the elbow, swelling and pain in the upper arm *and* shoulder, and restricted ability to reach and lift with her left arm.

The administrative law judge (ALJ) awarded Dye compensation for a scheduled arm injury. Dye argued that her injury should be unscheduled because its residuals affected her shoulder—an unscheduled body part—as well as her arm. Dye based her argument on two decisions by the court of appeals: *Low v. Industrial Commission,* 140 Ariz. 52, 680 P.2d 188 (App.1984) and *Safeway Stores, Inc. v. Industrial Commission,* 27 Ariz.App. 776, 558 P.2d 971 (1976). The ALJ rejected Dye's argument and summarily affirmed his scheduled award on administrative review. Dye then sought review by the court of appeals.

The court of appeals affirmed the ALJ's scheduled award. *Dye v. Industrial Commission,* 153 Ariz. 289, 736 P.2d 373 (Ct. App.1986). It reasoned that "functional impairment at a joint can always be described as either restricted extremity motion or as restricted joint motion." 153 Ariz. at 292, 736 P.2d at 376. It therefore held that "[a]bsent disabling pain" in an unscheduled body part, "the situs of the anatomic abnormality determines the disability classification." *Id.* at 291, 736 P.2d at 375. In this case, a scheduled disability was proper, the court concluded, because the situs of Dye's injury was her arm and there was no evidence that the pain and swelling in her shoulder were "disabling." *Id.*

## II. DISCUSSION

The court of appeals' decision in this case is based on principles first articulated in *Arnott v. Industrial Commission,* 103 Ariz. 182, 438 P.2d 419 (1968). In *Arnott,* this court affirmed the industrial commission's award of a scheduled disability for partial loss of use of a minor arm, even though the claimant's original injuries were to his back and neck. The *Arnott* court reasoned that a scheduled disability was proper because (1) the location of the resid-

---

1. This statement is subject to at least one exception: injuries to two separate scheduled body parts usually require an unscheduled award. *See Ronquillo v. Industrial Commission,* 107 Ariz. 542, 490 P.2d 423 (1971).

2. Needless to say, not every impairment of an unscheduled portion of the body translates into a loss of earning capacity. Consequently, some claimants may be better off with a scheduled injury than with an unscheduled injury.

ual effect of the injury, rather than the location of the injury itself, should determine the classification, and (2) the effects of the claimant's injuries were limited exclusively to his arm. 103 Ariz. at 184–85, 438 P.2d at 421–22.

*Arnott*'s impact on cases involving injuries affecting shoulders and arms is problematic for several reasons. First, *Arnott* actually involved a partial loss of function in the claimant's *shoulder*, not his arm. 103 Ariz. at 184, 438 P.2d at 421. Consequently, as Judge Kleinschmidt pointed out in *Low*, 140 Ariz. at 54, 680 P.2d at 190, a strong argument can be made that *Arnott* assumed, wrongly and without discussion, "that a shoulder impairment is included within A.R.S. § 23–1044(B)(21), the schedule for partial loss of use of an arm." Second, *Arnott* arguably implies that because functional impairment of a joint always results in restricted extremity motion, injuries to joints should be classified as scheduled injuries to the affected extremity, rather than as unscheduled injuries to the joint.

We reaffirm the basic principle announced in *Arnott* that classification turns on the portions of the body affected by the claimant's injury. However, *Arnott*'s application to cases such as this one is limited by our subsequent decision in *Miller v. Industrial Commission*, 110 Ariz. 229, 517 P.2d 91 (1973). In that case, we held that a claimant suffering from a hip injury, which resulted in loss of use of his right leg, was entitled to an unscheduled award (hip injuries are unscheduled). *Arnott* was not controlling because the claimant in *Miller* had "disabling" hip pain in addition to his leg disability, while the claimant in *Arnott* had only an arm disability. 110 Ariz. at 231, 517 P.2d at 93.

The court of appeals has used *Miller* to "unschedule" shoulder injuries in three cases: *Eggleston v. Industrial Commission*, 24 Ariz.App. 444, 539 P.2d 918 (1975), *Safeway, supra*, and *Low, supra*. In those cases, the anatomical injury was to the claimant's shoulder, and the claimant had what the courts described as "disabling" shoulder pain. On the basis of these factors, the courts reasoned that *Miller*, rather than *Arnott*, governed and that an unscheduled disability was therefore proper.

In this case, the court of appeals distinguished *Safeway* and *Low*, and by implication *Miller*, on two grounds: the situs of the anatomic abnormality and the absence of disabling pain. We hold that these distinctions, although accurate, are insufficient to justify a scheduled disability. *Miller* was a step in the right direction, but it is illogical to distinguish between scheduled and unscheduled disabilities on the basis of whether the pain in the unscheduled body part is "disabling." What is disabling to one person may be tolerable to another. The law should not work to the advantage of those who either have low pain tolerance or are willing to exaggerate.

■ Rid of their reliance on the disabling-pain distinction, *Miller*, *Eggleston*, *Safeway*, and *Low* govern this case. Dye broke the top of the arm bone that fits into her shoulder joint. She has a 15 percent impairment of her "left upper extremity," with some pain and swelling extending into her shoulder. The residual effects of Dye's injury affect the function of both her upper arm and her shoulder. In these circumstances, the majority rule holds that the scheduled disability is not exclusive. As Professor Larson has noted: "The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive." 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 58.21, at 10–344.44 to –344.45 and n. 13 (1986) (citing cases from 28 states).

■ In determining whether a disability is scheduled or unscheduled, the combined effects of the original injury on all portions of the body should be considered. Pain, swelling, or any other impairment to an unscheduled portion of the body, if it affects function at all, transforms a scheduled injury into an unscheduled injury. *See* 2 A. LARSON, *supra* § 58.21; *Miller, supra*.

The court of appeals' opinion and the award both are vacated. This case is remanded to the industrial commission for proceedings consistent with this opinion.

GORDON, C.J., and CAMERON and HOLOHAN, JJ., concur.

Justice JACK D.H. HAYS participated in the determination of this matter but retired prior to the filing of this opinion.

Justice JAMES MOELLER did not participate in the determination of this action.